Nos. 25-6164, 26-5005

---

THE UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

---

FORCHT BANK, N.A.; KENTUCKY BANKERS
ASSOCIATION; BANK POLICY INSTITUTE,
*Plaintiffs-Appellees*,

v.

CONSUMER FINANCIAL PROTECTION BUREAU;
RUSSELL VOUGHT, Acting Director of the
Consumer Financial Protection Bureau,
*Defendants-Appellants (26-5005),*

and

FINANCIAL TECHNOLOGY ASSOCIATION,
*Intervenor-Appellant (25-6164).*

---

On Appeal from the U.S. District Court for the Eastern District of Kentucky
No. 5:24-cv-304 (Hon. Danny C. Reeves, District Judge)

---

**PLAINTIFFS-APPELLEES' OPPOSED MOTION FOR ABEYANCE**

---

JEFFREY B. WALL
JUDSON O. LITTLETON
SULLIVAN & CROMWELL LLP
1700 New York Avenue, N.W.
Washington, D.C. 20006
Tel: (202) 956-7000

Plaintiffs-appellees respectfully request that the Court place these consolidated appeals in abeyance while the Consumer Financial Protection Bureau (CFPB) promulgates a new final rule to replace the rule at issue in this case.[1]

These appeals arise out of a district-court order staying the compliance deadlines and preliminarily enjoining the enforcement of the CFPB's 2024 rule asserting the authority to regulate "open banking." *See Required Rulemaking on Personal Financial Data Rights*, 89 Fed. Reg. 90,838 (Nov. 18, 2024) (Rule). Plaintiffs brought this suit immediately after the Rule was finalized to challenge it as unlawful under the Administrative Procedure Act. After the change of presidential administration in 2025, the CFPB reviewed this matter and agreed with plaintiffs' core contentions that the Rule

---

[1] Plaintiffs conferred with appellants before filing this motion. Counsel for the CFPB stated: "Defendants-Appellants do not consent to the motion because they believe periodic extensions will allow for greater clarity concerning the rulemaking process than holding the appeal completely in abeyance. Defendants-Appellants believe it makes more sense to revisit the need for this appeal closer in time to the June 22, 2026 deadline for filing of the opening briefs." Counsel for intervenor Financial Technology Association stated: "FTA is amenable to further extensions of the briefing schedule to allow the rulemaking process to be completed but would prefer to do so periodically as the rulemaking progresses rather than through a blanket abeyance of briefing."

is unlawful.  Initially, the Bureau filed a motion for summary judgment urging the district court to vacate the Rule.  But the Bureau later decided instead to undertake a new, "accelerated" notice-and-comment process to replace the Rule.  It then successfully moved the district court—in the middle of summary-judgment briefing—to stay litigation addressing the Rule while the CFPB completes that new rulemaking.

Although the CFPB's confessions of error were welcome, they did not solve a critical problem:  until the agency completes its new rulemaking, the 2024 Rule's compliance deadlines would have remained in place, effectively forcing plaintiffs and their members to prepare to comply—at significant expense—with an admittedly unlawful Rule the Bureau was working to replace.  To solve that problem, plaintiffs sought judicial relief, moving for a stay of the Rule's compliance deadlines under Section 705 of the APA and a preliminary injunction against its enforcement.  The Bureau took no position on that motion.  The district court, after independently assessing plaintiffs' claims and concluding that the Rule was likely unlawful in multiple respects, granted that interim relief so that plaintiffs would not be forced "to incur expenses that would be unrecoverable and unnecessary if the new rule

substantially revises the existing [Rule's] requirements or if the current Rule is vacated." Mem. Op. and Order, RE 90, Page ID # 2377.

In these consolidated appeals, both intervenor Financial Technology Association (FTA)—which intervened to defend the Rule below—and the CFPB—despite having taken no position on plaintiffs' motion for a stay and preliminary injunction—have appealed the district court's order.  But that order merely postpones compliance obligations and enjoins enforcement of a Rule that the CFPB has said is unlawful and is in the process of replacing.  It makes little sense for this Court to address the compliance deadlines under the old Rule when the Bureau has already stated that its new rule will be substantially different.  And the Court's decision may have minimal (if any) practical effect:  the CFPB may well have finalized its new rule—with new compliance deadlines—before the Court even issues a decision in this appeal. And even if the Court were to issue a decision first and reverse the district court's order, that would only lead to the bizarre result of forcing parties to comply with a Rule that the CFPB itself believes to be unlawful for a brief period until the replacement rule is finalized.

The proper course is to hold these appeals in abeyance while the CFPB considers and finalizes its replacement rule.  Courts of appeals routinely hold

cases in abeyance "when an agency plans to reconsider a challenged rule." *E.g.*, *Utah* v. *EPA*, 2025 WL 1354371, at \*2 (D.C. Cir. May 2, 2025); *see* Order, *Sierra Club* v. *EPA*, No. 21-3057 (6th Cir. Apr. 14, 2021), Dkt. No. 31-2. This practice has significant benefits for courts and litigants because it conserves resources, and it avoids the need for parties to litigate (and courts to resolve) disputes over legal obligations that will soon become obsolete.

This Court should follow that course here and hold these appeals in abeyance while the CFPB completes its new rulemaking process. Doing so provides more certainty and makes more sense than granting periodic, piecemeal extensions of the briefing deadlines as the CFPB and FTA suggest, *see supra* n.1, because it will never serve the interests of judicial and party economy for this Court to review the district court's order staying the Rule while the Bureau is working on a new rule. Instead, the parties should await the issuance of the new rule and then, consistent with the district court's order staying the litigation, assess whether and what additional proceedings may be warranted.

## BACKGROUND

### A.    The CFPB's Rulemaking

Adopted in 2024 near the end of the prior presidential administration, the Rule plaintiffs challenged in this case purports to comprehensively regulate "open banking." That term describes the process in which customers authorize banks to share their financial data with third parties—most frequently, financial-technology companies (or fintechs)—to enable those third parties to provide financial services such as budgeting and peer-to-peer payment solutions. Banks welcome the opportunity to serve their customers through consumer-authorized data sharing, but sharing highly sensitive consumer financial data presents obvious risks, and it can place significant burdens on banks to fulfill these third-party requests in a way that ensures the protection of that data. Before the CFPB adopted the Rule, private industry had worked collaboratively to facilitate safe and secure data-sharing to address those concerns, and open banking was thriving under those initiatives.

The Rule sought to halt that private progress and anoint the CFPB as the czar of open banking. It adopted a complex and highly burdensome regime mandating that banks share their customers' sensitive financial data with any

third party that can obtain customer authorization. The Rule mandated that banks create a dedicated application programming interface (API) to facilitate that sharing, and required these APIs to meet highly demanding (yet hopelessly vague) performance standards. And it prohibited banks from limiting third-party access to these APIs, even based on risk concerns, outside of narrowly prescribed circumstances. To top it off, after imposing these highly burdensome mandates, the Rule prohibited banks from charging any fees to the third-party entities who profit from this secure data access. The Rule then set fixed and rapidly approaching deadlines by which banks had to come into compliance with the Rule.

### B.    This Litigation

Plaintiffs sued to challenge the Rule immediately after it was finalized. Plaintiffs contend that the Rule violates the APA in multiple respects, including that it exceeds the CFPB's statutory authority by compelling banks to provide customer data to third parties, and by prohibiting banks from charging any fees to third parties for access to the APIs mandated by the Rule. *See* Compl., RE 1, Page ID ## 42-45, 48-53. Plaintiffs also alleged that the Rule is arbitrary and capricious because it subjects consumer data to

7

unreasonable security risks and imposes unreasonable fixed compliance deadlines. *Id.* at Page ID ## 45-47, 51-52.

After a change in presidential administration and Bureau leadership, the CFPB requested, and the district court granted, a brief stay in proceedings so it could reconsider its position on the Rule. *See* Order, RE 41, Page ID ## 1173-1174; Order, RE 45, Page ID ## 1448-1449. During this stay, the district court granted intervenor FTA leave to intervene to defend the Rule. *See* Mem. Order, RE 56, Page ID ## 1484-1486. After completing its reconsideration, the CFPB filed a motion for summary judgment. It agreed with many of plaintiffs' arguments and concluded that the rule was "unlawful and should be set aside" as "exceed[ing] the Bureau's statutory authority" and "arbitrary and capricious." Defs.' Mem. in Supp. of Mot. for Summ. J., RE 58-1, Page ID # 1500. Most fundamentally, the CFPB agreed that "[n]othing in the language of Section 1033 or its legislative history suggest that Congress intended to delegate to the Bureau free-ranging authority to regulate the entire open banking system." *Id.* at Page ID # 1506.

Two months later, on the day its summary-judgment reply brief was due, the CFPB moved for a stay of the district-court proceedings. It stated that it had "now decided to initiate a new rulemaking to reconsider the Rule

with a view to substantially revising it and providing a robust justification." Defs.' Mot. to Stay, RE 80, Page ID # 1970. In the interest of "conserv[ing] judicial resources," the CFPB requested that the district court stay the litigation while the Bureau "engage[d] in an accelerated rulemaking process" to "comprehensively reexamine this matter." *Id.* Acknowledging that "the CFPB intends to effect significant changes to the current Rule," the district court granted the stay pending the CFPB's new rulemaking, which "could likely obviate the need for this action." Order, RE 83, Page ID # 1985. It then ordered the parties to submit joint status reports every 45 days on the progress of the rulemaking and "within 7 days of final agency action on the Rule." *Id.* at Page ID # 1986.

In securing a stay of the litigation, however, the CFPB neither suspended nor asked the district court to suspend the Rule's rapidly approaching compliance deadlines. Those deadlines thus remained in effect, meaning that regulated parties could have been forced to expend substantial time and money preparing to potentially come into compliance with a Rule that the CFPB agreed was unlawful and was actively working to replace. Plaintiffs therefore moved in the district court to stay the Rule's compliance deadlines pursuant to 5 U.S.C. § 705 and to preliminarily enjoin the CFPB from

enforcing the Rule while the Bureau completed its new rulemaking. *See* Pls.' Mot. to Lift Stay, RE 85, Page ID # 1988. The CFPB "t[ook] no position" on plaintiffs' motion, but provided an "update" on its "accelerated rulemaking process." Defs.' Resp. to Pls.' Mot. to Lift Stay, RE 86, Page ID # 2300.

On October 29, 2025, the district court granted plaintiffs' motion. It agreed with plaintiffs' (and the CFPB's) arguments for why plaintiffs were likely to succeed on the merits of their claims that the Rule is unlawful. *See* Mem. Op. and Order, RE 90, Page ID ## 2367-2375. And the court found that plaintiffs would suffer irreparable harm if they were forced to expend unrecoverable time and money preparing to come into compliance with a Rule that was likely (and concededly) unlawful and soon to be replaced. *See id.* at Page ID ## 2375-2377. The court accordingly "postpon[ed] [the Rule's] effective date . . . pending final rulemaking on [the CFPB's] reconsideration" and preliminarily enjoined enforcement of the Rule until the CFPB completed its reconsideration. *Id.* at Page ID ## 2378-2379.

In the meantime, the CFPB began its "accelerated rulemaking process." Joint Status Report, RE 88, Page ID # 2337. On August 22, 2025, the Bureau issued an Advance Notice of Proposed Rulemaking seeking comments on a variety of topics in order to "develop[] a well-reasoned approach to

implementing [Section] 1033 that aligns with the policy preferences of new leadership and addresses the defects in the existing rule." *Id.* And as the CFPB recently explained to this Court, it "is actively considering the issues raised in the ANPR" and anticipates issuing "a new final rule that substantially revises the [existing] Rule." Mot. to Extend Briefing Schedule at 3, Dkt. No. 19, No. 25-6164 (Mar. 6, 2026). In light of that progress, the CFPB sought an approximately 90-day extension of the briefing deadlines in this appeal on the ground that its ongoing rulemaking "may avoid the need for continued litigation over the original Rule." *Id.*

## ARGUMENT

This Court has broad discretion to hold appeals in abeyance "to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants." *Landis* v. *N. Am. Co.*, 299 U.S. 248, 254 (1936). Recognizing the "cardinal virtue of Article III courts to avoid unnecessary decisions," *Ctr. for Biological Diversity* v. *EPA*, 56 F.4th 55, 71 (D.C. Cir. 2022), the Court has previously exercised this discretion to place cases in abeyance in order to "eliminate[] the risk of unnecessary or redundant use of judicial resources." Order at 1, *Pacheco* v. *Bondi*, No. 21-3104 (6th Cir. June 21, 2021), Dkt. No. 15-2. Relevant here, this Court and others often take

11

that course "when an agency plans to reconsider a challenged rule." *E.g.*, *Utah v. EPA*, 2025 WL 1354371, at \*2 (D.C. Cir. May 2, 2025); *see* Order, *Sierra Club v. EPA*, No. 21-3057 (6th Cir. Apr. 14, 2021), Dkt. No. 31-2; Order, *Kentucky v. EPA*, No. 23-5343 (6th Cir. July 3, 2023), Dkt. No. 28; Order, *In re: MCP No. 185*, No. 24-7000 (6th Cir. Aug. 12, 2024), Dkt. 83-2.

Because the CFPB is in the midst of a new rulemaking intended to replace the Rule at issue in these appeals, the Court should follow that same course and hold these appeals in abeyance. Doing so here makes particular sense for at least two reasons.

First, any ruling from this Court is very unlikely to have any real practical impact. But for the district court's order, the Rule's first compliance deadline would arrive on June 30, 2026.[2] But under the current schedule for these appeals, the parties will not even finish briefing until September—long after that date has come and gone. *See* Ruling Letter at 2, Dkt. No. 20, No. 25-6164 (Mar. 9, 2026). And by the time this Court holds oral argument and

---

[2] The Rule set the first compliance deadline as April 1, 2026. *See* 12 C.F.R. § 1033.121(b)(1). When the CFPB obtained a 90-day stay of the litigation below in order to review the Rule following the change in presidential administrations, the district court postponed that compliance deadline by a corresponding 90 days to avoid prejudice to plaintiffs. *See* Order, RE 41, Page ID ## 1173-1174; Order, RE 45, Page ID ## 1448-1449.

issues a decision, one of two things will be true.  Either the CFPB will have finalized its new rule with new compliance deadlines—rendering the compliance deadlines stayed by the district court obsolete and this appeal moot—or the Court's ruling would only have the effect of senselessly requiring regulated parties to comply for some period of time with a Rule that the Bureau has conceded is unlawful and is actively replacing, simply because the Bureau has not stayed those deadlines on its own or completed its "accelerated rulemaking process" quickly enough.

Second, a decision from this Court in these appeals is likely to amount (at least in part) to an advisory opinion.  As part of its decision to stay the compliance deadlines and issue a preliminary injunction, the district court found that plaintiffs were likely to succeed on the merits of their challenges to the Rule.  Mem. Op. and Order, RE 90, Page ID # 2374; *see Immigrant Defs. L. Ctr.* v. *Noem*, 145 F.4th 972, 983 (9th Cir. 2025) (stays under Section 705 of the APA "turn on the same factors as preliminary injunctions," including likelihood of success on the merits).  Accordingly, to resolve these appeals, this Court will have to address the merits arguments plaintiffs raised in their challenge to the Rule.  But the CFPB has *agreed* with many of those arguments and unequivocally stated that it will be "substantially revising" the

13

Rule to "align[] [it] with the policy preferences of new leadership and address[] the defects in the initial Rule." Defs.' Mot. to Stay, RE 80, Page ID # 1970; *see* Mot. to Extend Briefing Schedule at 3, Dkt. No. 19, No. 25-6164 (Mar. 6, 2026).

As a result, there is a significant possibility that any ruling from this Court on the merits of the old Rule will address a very different regulation than the one the CFPB ultimately puts in place. And if any party believes that the new rule is also unlawful on certain grounds, at least some of those grounds are likely to be different from those at issue in this appeal. In other words, any decision from this Court addressing the merits of the old Rule is not likely to resolve any future challenges to the new rule that the Bureau ultimately adopts.

Holding these appeals in abeyance while the CFPB completes its rulemaking avoids these problems. It would allow the Bureau to "apply its expertise and correct any errors" in the Rule, and would "prevent[] piecemeal and unnecessary judicial review." *Am. Petroleum Inst.* v. *EPA*, 683 F.3d 382, 388 (D.C. Cir. 2012). Abeyance would also preserve "economy of time and effort . . . for [the] litigants." *Landis*, 299 U.S. at 254. There is no reason for the parties to write (and this Court to review) as many as 59,000 combined

words between the briefs in this case addressing the compliance deadlines of a Rule that the agency itself is working to replace. *See* Order at 1, Dkt. No. 16-2, No. 25-6164 (Feb. 12, 2026). As the CFPB and FTA recently put it, "[t]he possibility of a new final rule that addresses the issues in this appeal" may render "briefing or argument" on these appeals "unnecessary." Mot. to Extend Briefing Schedule at 3, Dkt. No. 19, No. 25-6164 (Mar. 6, 2026). Plaintiffs agree, but that is a reason to hold these appeals in abeyance, not simply extend the briefing deadlines on a piecemeal basis. With the appeals in abeyance, the parties can await the publication of the CFPB's new rule, evaluate whether they believe that rule has legal deficiencies, and propose next steps for any litigation at that point, as required by the district court's stay order.

## CONCLUSION

For the foregoing reasons, the Court should hold these appeals in abeyance pending the CFPB's completion of its rulemaking and publication of a new final rule in the Federal Register.

Dated:  March 13, 2026

Respectfully submitted,

/s/ Judson O. Littleton
Jeffrey B. Wall
Judson O. Littleton
SULLIVAN & CROMWELL LLP
1700 New York Avenue, N.W.
Washington, D.C. 20006
Tel: (202) 956-7000
wallj@sullcrom.com
littletonj@sullcrom.com

*Counsel for Plaintiffs-Appellees Forcht Bank, N.A., Kentucky Bankers Association, and Bank Policy Institute*

16

## CERTIFICATE OF COMPLIANCE

I certify that the foregoing filing complies with the word limit of Fed. R. App. P. 27(d)(2)(A) because it contains 3,220 words, excluding the parts of the filing exempted by Fed. R. App. P. 32(f). The filing complies with the typeface and type style requirements of Fed. R. App. P. 32(a)(5) and (a)(6) because it was prepared in a proportionally spaced typeface in 14-point font.

Dated: March 13, 2026

Respectfully submitted,

/s/ Judson O. Littleton
Judson O. Littleton
SULLIVAN & CROMWELL LLP
1700 New York Avenue, N.W.
Washington, D.C. 20006
Tel: (202) 956-7000
littletonj@sullcrom.com

*Counsel for Plaintiffs-Appellees Forcht Bank, N.A., Kentucky Bankers Association, and Bank Policy Institute*

17

## CERTIFICATE OF SERVICE

I certify that on March 13, 2026, I electronically filed the foregoing Motion for Abeyance with the Clerk of the Court of the United States Court of Appeals for the Sixth Circuit using the Court's appellate CM/ECF system. I further certify that service was accomplished on all participants in the case via the Court's CM/ECF system.

Dated:  March 13, 2026

Respectfully submitted,

/s/ Judson O. Littleton
Judson O. Littleton
SULLIVAN & CROMWELL LLP
1700 New York Avenue, N.W.
Washington, D.C. 20006
Tel: (202) 956-7000
littletonj@sullcrom.com

*Counsel for Plaintiffs-Appellees Forcht Bank, N.A., Kentucky Bankers Association, and Bank Policy Institute*

18